# IN THE UNITED STATES DISTRICT COURT

# FOR THE DISTRICT OF NEW MEXICO

NICK JASPER,

   Plaintiff,

vs.                No. CIV 18-0935 JB/SCY

MARK GALLEGOS; SHELIA
MORRISON; LANCE PYLE and
JOHN/JANE DOES,

   Defendants.

## MEMORANDUM OPINION AND ORDER

**THIS MATTER** comes before the Court sua sponte under 28 U.S.C. § 1915A and 42 U.S.C. § 1997e, on: (i) the Plaintiff's Tort Complaint for Damages, filed August 20, 2018 (Doc. 1-2)("Complaint") in the County of Curry Ninth Judicial District Court, State of New Mexico, and removed to the Court on October 8, 2018, see Notice of Removal, filed October 8, 2018 (Doc. 1); and (ii) the Plaintiff's Notice of Change of Address, filed June 10, 2021 (Doc. 16)("Letter"). On May 12, 2021, The Honorable Steven C. Yarbrough, Magistrate Judge for the United States District Court for the District of New Mexico, ordered Jasper to show cause why his federal claims should not be dismissed under § 1997e for Jasper's failure to exhaust prison administrative remedies. See Order to Show Cause at 1, filed May 12, 2021 (Doc. 15). On June 10, 2021, Jasper responded to the Order to Show Cause and requested a continuance. See Letter at 1. The Court will grant Jasper's request for a continuance.

## FACTUAL AND PROCEDURAL BACKGROUND

Plaintiff Nick Jasper is an incarcerated prisoner. See Complaint ¶ 3, at 3. At the time that he filed his Complaint, he was incarcerated at the Curry County Adult Detention Center in Clovis,

New Mexico.  See Complaint ¶ 4, at 3.  Plaintiff filed his Complaint pro se in the Ninth Judicial

District Court on August 20, 2018.  See Complaint ¶ 2, at 2.  Jasper names Warden Mark Gallegos,

Lt. Shelia Morrison, County Commissioner Lance Pyle, and John/Jane Does as Defendants.  See

Complaint ¶¶ 4-6, at 3-4.  Jasper's Complaint alleges several Eighth Amendment, U.S. Const.

amend. VIII, and Fourteenth Amendment, U.S. Const. amend. XIV, violations arising out of the

conditions of his confinement as a prisoner at the Curry County Detention facility.  See Complaint

¶¶ 9-18, at 6-10.  Jasper seeks declaratory relief and damages.  Complaint ¶¶ A-D, at 11.  Jasper

states that his claims are brought under 42 U.S.C. § 1983 and the New Mexico Tort Claims Act,

N.M.S.A. §§ 41-4-1 through 41-4-30.  See Complaint ¶ 1, at 2.  The events giving rise to Jasper's

Complaint occurred on or about August 3, 2016.  See Complaint at 13.  Jasper's Complaint alleges

the Defendants:

> violated the (PREA Act) Prison Rape Elimination Act[1] by allowing the Plaintiff to
> be striped down to his under-wear in front of a female detention officer . . . .
> Detainee Nick Jasper was forced to lie on an unsanitary pod floor flooded with
> sewer water face down in the brown liquid for several minutes with [a] tazer to his
> back.

Complaint ¶ 10, at 6.  He claims that he was tased, stripped, and then:

> taken to recreation area and the female detention officer then patted down the
> Detainee Nick Jasper while only in his boxer-shorts, and the female detention
> officer Jane-Doe stated we have access to your junk [referring to his genitals] so
> you better behave, they made jokes and insulting comments[.]

Complaint ¶ 11, at 7.

> Nick Jasper was in fact forced to clean the brown liquid with no shoes or other
> protective footwear.  He was not given any disinfectant to clean with, but just a
> mop and broom.  Plaintiff was forced to clean for several hours.  He was served his
> breakfast and lunch in the still filthy, unhygienic surroundings despite his protest.
> The water in the Pod was turned off for several hours.  Therefore the Plaintiff was
> left without any water for drinking, and washing even his hands.

---

[1] 42 U.S.C. §§ 30301-30309.

Complaint ¶ 14, at 9.   Jasper seeks $65,000.00 in compensatory damages and $750,000.00 in punitive damages for pain and suffering.   Complaint ¶¶ B-C, at 11.   Jasper attached a letter to the Complaint on attorney letterhead purporting to assert tort claims on behalf of several prisoners. See Complaint at 13-14.   The handwritten allegations in Jasper's Complaint reflect the general allegations of the attorney's letter made on behalf of all of the prisoners. See Complaint at 13-14. Although a form statement under penalty of perjury and a signature block are included in Jasper's Complaint, Jasper did not sign the document. See Complaint at 12.   The attached letter on attorney letterhead also does not include the identified attorney's signature. See Complaint at 13-14.

## LAW REGADING EXHAUSTION OF REMEDIES

Jasper's federal claims are civil rights claims under § 1983.   See Baker v. McCollan, 443 U.S. 137, 144 n. 3 (1979); Albright v. Oliver, 510 U.S. 266, 271 (1994).   The Prison Litigation Reform Act ("PLRA"), 42 U.S.C. § 1997e(a) provides: "No action shall be brought with respect to prison conditions under section 1979 of the Revised Statutes of the United States (42 U.S.C. 1983), or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted."   42 U.S.C. § 1997e(a). The PLRA "requires prisoners to exhaust prison grievance procedures before filing suit."   Jones v. Bock, 549 U.S. 199, 202 (2007)(citing 42 U.S.C § 1997e(a)).

The exhaustion requirement "applies to all inmate suits about prison life, whether they involve general circumstances or particular episodes, and whether they allege excessive force or some other wrong."   Porter v. Nussle, 534 U.S. 516, 532 (2002).   The exhaustion requirement, however, does not apply to former prisoners who file suit after their release.   See Norton v. City of Marietta, 432 F.3d 1145, 1150-51 (10th Cir. 2005).   Jasper's status at the time he files suit is

determinative whether § 1997e(a)'s exhaustion provision applies to the claims. See Norton v. City of Marietta, 432 F.3d at 1150. Exhaustion is mandatory, and the Court is without discretion to dispense with administrative exhaustion where the PLRA requires it. Booth v. Churner, 532 U.S. 731, 739 (2001).

> Once within the discretion of the district court, exhaustion in cases covered by § 1997e(a) is now mandatory. See Booth v. Churner, 532. U.S. 731, 739 . . . (2001). All "available" remedies must now be exhausted; those remedies need not meet federal standards, nor must they be "plain, speedy, and effective." See ibid.; see also id., at 740, n.5 . . . . Even when the prisoner seeks relief not available in grievance proceedings, notably money damages, exhaustion is a prerequisite to suit. See id., at 741 . . . . And unlike the previous provision, which encompassed only § 1983 suits, exhaustion is now required for all "action[s] . . . brought with respect to prison conditions," whether under § 1983 or any other Federal law. Compare 42 U.S.C. § 1997e (1994 ed.) with 42 U.S.C. § 1997e(a) (1994 ed., Supp. V).

Porter v. Nussle, 534 U.S. at 524. The exhaustion provision was enacted by Congress

> to reduce the quantity and improve the quality of prisoner suits . . . . Congress afforded corrections officials time and opportunity to address complaints internally before allowing the initiation of a federal case. In some instances, corrective action taken in response to an inmate's grievance might improve prison administration and satisfy the inmate, thereby obviating the need for litigation. Booth, 532 U.S., at 737 . . . . In other instances, the internal review might "filter out some frivolous claims." Ibid. And for cases ultimately brought to court, adjudication could be facilitated by an administrative record that clarifies the contours of the controversy.

Porter v. Nussle, 534 U.S. at 524-25.

"A prisoner does not satisfy the PLRA's exhaustion requirements by merely filing an untimely or otherwise procedurally defective administrative grievance or appeal." Woodford v. Ngo, 548 U.S. 81, 83-84 (2006). "[E]xhaustion requirements are designed to ... give the agency a fair and full opportunity to adjudicate their claims." Woodford v. Ngo, 548 U.S. at 90. To properly exhaust administrative remedies under the PLRA, a prisoner must use all steps that the agency provides so that the agency addresses the issues on the merits. See Woodford v. Ngo, 548 U.S. at 90. The exhaustion requirement gives prisoners

an effective incentive to make full use of the prison grievance process and accordingly provides prisons with a fair opportunity to correct their own errors. This is particularly important in relation to state corrections systems because it is "difficult to imagine an activity in which a State has a stronger interest, or one that is more intricately bound up with state laws, regulations, and procedures, than the administration of its prisons." Preiser v. Rodriguez, 411 U.S. 475, 491-492 . . . (1973).

Woodford v. Ngo, 548 U.S. at 94 (internal quotation marks omitted).

The PLRA requires a prisoner seeking money damages through a lawsuit brought under federal law to "complete a prison administrative process that could provide some sort of relief on the complaint stated, but no money" before filing suit. Booth v. Churner, 532 U.S. at 734. "'[E]ven where the 'available' remedies would appear to be futile at providing the kind of remedy sought, the prisoner must exhaust the administration remedies available." Patel v. Fleming, 415 F.3d 1105, 1109 (10th Cir.2005)(quoting Jernigan v. Stuchell, 304 F.3d 1030, 1032 (10th Cir.2002)). Only when the prisoner completely has exhausted the prison's administrative process has the inmate satisfied the exhaustion requirement for his prison conditions claim. See Ross v. Cty. of Bernalillo, 365 F.3d 1181, 1187 (10th Cir.2004)(holding that, because the prison "was unable to do anything more in response to" the inmate's complaint, and because neither "money damages or any other retrospective relief was available through the prison's grievance process," the inmate "was required to do no more in order to exhaust his administrative remedies with respect to his dangerous conditions of confinement claims," but also concluding that the inmate had failed to grieve from alleged denials of medical treatment occurring after the date of first grievance, so those claims were not exhausted), overruled on other grounds in part by Jones v. Bock, 549 U.S. at 199.

The Supreme Court of the United States of America's rulings are unequivocal: "There is no question that exhaustion is mandatory under the PLRA and that unexhausted claims cannot be

brought in court." <u>Jones v. Bock</u>, 549 U.S. at 211 (citing <u>Porter v. Nussle</u>, 534 U.S. at 524). Indeed, "[e]xhaustion is no longer left to the discretion of the district court, but is mandatory." <u>Woodford v. Ngo</u>, 548 U.S. at 84.  Exhaustion is a precondition to filing a suit, and "an action brought before administrative remedies are exhausted must be dismissed without regard to concern for judicial efficiency." <u>Ruppert v. Aragon</u>, 448 F. App'x 862, 863 (10th Cir. 2012)[2].

The mandatory language means a court may not excuse a failure to exhaust, even to take special or exceptional circumstances into account.  <u>See</u> <u>Miller v. French</u>, 530 U.S. 327, 337 (2000) ("The mandatory 'shall' . . .  normally creates an obligation impervious to judicial discretion"). Judge made exhaustion doctrines do remain amenable to judge-made exceptions.  <u>See</u> <u>McKart v. United States</u>, 395 U.S. 185, 193 (1969)("The doctrine of exhaustion of administrative remedies ... is, like most judicial doctrines, subject to numerous exceptions").  A statutory exhaustion provision, however, like the PLRA's statutory requirement, stands on a different footing.  With statutory provisions, Congress establishes the rules, and courts have a role in creating exceptions only if Congress intends for them to do so.  Therefore, mandatory exhaustion statutes like the

---

[2]<u>Ruppert v. Aragon</u> is an unpublished opinion, but the Court can rely on an unpublished United States Court of Appeals for the Tenth Circuit opinion to the extent its reasoned analysis is persuasive in the case before it.  <u>See</u> 10th Cir. R. 32.1(A)("Unpublished decisions are not precedential, but may be cited for their persuasive value.").  The Tenth Circuit has stated:

> In this circuit, unpublished orders are not binding precedent, . . . and we have generally determined that citation to unpublished opinions is not favored. However, if an unpublished opinion or order and judgment has persuasive value with respect to a material issue in a case and would assist the court in its disposition, we allow a citation to that decision.

<u>United States v. Austin</u>, 426 F.3d 1266, 1274 (10th Cir. 2005).  The Court concludes that <u>Ruppert v. Aragon</u> has persuasive value with respect to a material issue and will assist the Court in its disposition of this Order.

PLRA create mandatory requirements and foreclose judicial discretion.  See, e.g., McNeil v. United States, 508 U.S. 106, 111, 113 (1993)(stating that "[w]e are not free to rewrite the statutory text" when Congress has strictly "bar[red] claimants from bringing suit in federal court until they have exhausted their administrative remedies").  The courts must take such statutes at face value and refuse to add unwritten limits onto the textual requirements.  See e.g., McNeil v. United States, 508 U.S. at 111; Shalala v. Illinois Council on Long Term Care, Inc., 529 U.S. 1, 12-14 (2000).  See also 2 R. Pierce, Administrative Law Treatise § 15.3 at 1241 (5th ed. 2010)(collecting cases).  Courts may not engraft an unwritten "special circumstances" exception onto the PLRA's exhaustion requirement.  Ross v. Blake, 578 U.S. 632, 648 (2016).

## ANALYSIS

Jasper was a "prisoner" within the PLRA's meaning at the time he filed his Complaint.  As the PLRA defines, "the term 'prisoner' means any person incarcerated or detained in any facility who is accused of, convicted of, sentenced for, or adjudicated delinquent for, violations of criminal law or the terms and conditions of parole, probation, pretrial release, or diversionary program."  42 U.S.C. § 1997e(h).  Jasper's incarceration status "at the time he files suit" determines whether he is considered a "prisoner" for the PLRA's purposes.  Norton v. City of Marietta, 432 F.3d 1145, 1150 (10th Cir. 2005).  Jasper was incarcerated at the Curry County Adult Detention facility at the time he filed suit.  See Complaint ¶ 4, at 3.  Jasper alleges being in a cell flooded with sewer water, Jasper being tased, Jasper being stripped to his boxer shorts, and Jasper being made to clean up the brown water and deal with prison conditions at the facility.  See Complaint ¶¶10-14, at 6-9.  Jasper was therefore required to exhaust his prison remedies before filing suit.  Jones v. Bock, 549 U.S. at 211 (holding that unexhausted claims cannot be pursued in court).

Jasper makes generalized allegations that he "sought to exhaust his administrative remedies, but the grievance forms were not provided by the jail and when they were, they were not answered." Complaint ¶ 7, at 5. The Complaint is unsigned, and Jasper does not provide any factual detail or documentation to support his allegations about exhaustion. See Fed. R. Civ. P. 11(b)(3). An unsigned letter on an attorney's letterhead also states that all of a listed group of individuals have filed informal grievances, but does not provide any further individualized detail. See Complaint at 13-14. The Defendants have answered, denied Jasper's allegation of exhaustion, and asserted the affirmative defense of failure to exhaust the prison administrative remedies. See Answer to Plaintiff's Tort Complaints for Damages, filed October 8, 2018 (Doc. 4)("Answer"). Therefore, pursuant to Jones v. Bock, on May 12, 2021, The Honorable Steven C. Yarbrough, Magistrate Judge for the United States District Court for the District of New Mexico, ordered Jasper to show cause why his federal claims should not be dismissed under § 1997e for failure of Jasper to exhaust prison administrative remedies. See Order to Show Cause at 1, filed May 12, 2021 (Doc. 15).

Jasper does not respond directly to the Order to Show Cause. Instead, he sent the Court a letter advising the Court that he was no longer incarcerated at the same facility and had a new address. See Notice of Change of Address, filed June 10, 2021 (Doc. 16)("Letter").[3] Jasper's June 10, 2021 Letter acknowledges receipt of the Order to Show Cause, and requests a continuance so he can "submit a form that would allow me to have access to the legal law library." Notice of

---

[3]Although Jasper apparently was transferred to a different facility in 2018 shortly after filing this proceeding, he did not advise the Court of his new address until he fortuitously received a copy of the Order to Show Cause in 2021.

Change of Address at 1.  The Court therefore grants Jasper's continuance and orders Jasper to respond to the Order to Show Cause within 180 days.

**IT IS ORDERED** that Jasper's request for a continuance in his Notice of Change of Address, filed June 10, 2021 (Doc. 16), is granted, and Jasper is ordered to respond to the Order to Show Cause within 180 days.

_____
UNITED STATES DISTRICT JUDGE

*Counsel and Parties*:

Nick Jasper
Las Cruces, New Mexico

      *Plaintiff pro se*

Daniel J. Macke
Macke Law & Policy LLC
Albuquerque, New Mexico

      *Attorney for Defendants Mark Gallegos, Shelia Morrison, and Lance Pyle*