IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW MEXICO

NICK JASPER,

       Plaintiff,

vs.                                                                    No. CV 18-00935 MIS/SCY

MARK GALLEGOS,
SHELIA MORRISON,
LANCE PYLE, and
JOHN/JANE DOES,

       Defendants.

## MEMORANDUM OPINION AND ORDER

THIS MATTER is before the Court *sua sponte* under 28 U.S.C. § 1915A and 42

U.S.C. § 1997e on the Tort Complaint for Damages filed by Plaintiff Nick Jasper in the

Ninth Judicial District Court, County of Curry, State of New Mexico, and removed to this

Court on October 8, 2018 ("Complaint").  (Doc. 1, 1-2).  The Court will order the Plaintiff

to show cause why the federal claims in this case should not be dismissed for failure to

exhaust prison administrative remedies.

## I.  FACTUAL AND PROCEDURAL BACKGROUND

Plaintiff is an incarcerated prisoner.  At the time he filed his Complaint, he was

incarcerated at the Curry County Adult Detention Center in Clovis, New Mexico.  (Doc. 1-

2 at 3).  Plaintiff filed his Complaint pro se in the State of New Mexico, Ninth Judicial

District Court, on August 20, 2018.  (Doc. 1-2 at 1).   Plaintiff names Warden Mark

Gallegos, Lt. Shelia Morrison, County Commissioner Lance Pyle, and John/Jane Does

as Defendants.  (Doc. 1-2 at 1). Plaintiff's Complaint alleges a number of Eighth and

Fourteenth Amendment violations arising out of the conditions of his confinement as a

1

prisoner at the Curry County Detention facility. (Doc. 1-2 at 6-10).  Plaintiff appears to seek declaratory and damages relief.  (Doc. 1-2 at 11). Plaintiff states that his claims are brought under 42 U.S.C. § 1983 and the New Mexico Tort Claims Act. (Doc. 1-2 at 2). The events giving rise to Plaintiff's Complaint appear to have occurred on or about August 3, 2016.  (Doc. 1-2 at 13).  Plaintiff's Complaint alleges the Defendants:

> "violated the PREA Act (Prison Rape Elimination Act) by allowing the Plaintiff to be striped down to his under-wear in front of a female detention officer . . . Nick Jasper was forced to lie on an unsanitary pod floor flooded with sewer water for several minutes with a tazer to his back."

(Doc. 1-2 at 6).  He claims that he was tazed, stripped, and then:

> "taken to recreation area and the female detention officer then patted down Nick Jasper while only in his boxer shorts, and the female detention officer Jane Doe stated we have access to your junk [referring to his genitals] so you better behave, they made jokes and insulting comments.

(Doc. 1-2 at 7).

> "Nick Jasper was in fact forced to clean the brown liquid with no shoes or other protective footwear.  He was not given any disinfectant to clean with, but just a mop and broom.  Plaintiff was forced to clean for several hours.  He was served his breakfast and lunch in the still filthy, unhygienic surroundings despite his protest.  The water in the Pod was turned off for several hours. Therefore the Plaintiff was left without any water for drinking, and washing even his hands."

(Doc. 1-2 at 9).  Plaintiff seeks $65,000 in compensatory and $750,000 in punitive damages for pain and suffering. (Doc. 11-2 at 11).  There is an attached letter on attorney letterhead purporting to assert tort claims on behalf of several prisoners.  (Doc. 1-2 at 13-14).  The handwritten allegations of Plaintiff's Complaint repeat the general allegations of the attorney's letter made on behalf of all of the prisoners.  (Compare Doc. 1-2 at 6-9 and at 13-14). Although a form statement under penalty of perjury and a signature block are

included in Plaintiff's Complaint, the document is not signed by the Plaintiff.  (Doc. 1-2 at

12).   Nor does the attached letter on attorney letterhead include any signature of the

identified attorney.  (Doc. 1-2 at 13-14).

## II.   THE LAW REGADING EXHAUSTION OF REMEDIES

Plaintiff's federal claims are civil rights claims under § 1983.   See, *Baker v.*

*McCollan,* 443 U.S. 137, 144 n. 3 (1979); *Albright v. Oliver,* 510 U.S. 266, 271 (1994).

The Prison Litigation Reform Act provides:

> "No action shall be brought with respect to prison conditions under section
> 1979 of the Revised Statutes of the United States (42 U.S.C. 1983), or any other
> Federal law, by a prisoner confined in any jail, prison, or other correctional
> facility until such administrative remedies as are available are exhausted."

42 U.S.C. § 1997e(a).  The Prison Litigation Reform Act ("PLRA") "requires prisoners to

exhaust prison grievance procedures before filing suit." *Jones v. Bock*, 549 U.S. 199, 202

(2007) (citing 42 U.S.C § 1997e(a)).

The exhaustion requirement "applies to all inmate suits about prison life, whether

they involve general circumstances or particular episodes, and whether they allege

excessive force or some other wrong." *Porter v. Nussle*, 534 U.S. 516, 532 (2002).

However, the exhaustion requirement does not apply to former prisoners who file suit

after their release. *Norton v. City of Marietta*, 432 F.3d 1145, 1150–51 (10th Cir. 2005).

Plaintiff's status at the time he files suit is determinative of whether § 1997e(a)'s

exhaustion provision applies to the claims. *Id.* at 1150. Exhaustion is mandatory and the

Court is without discretion to dispense with administrative exhaustion where the PLRA

requires it. *Booth v. Churner*, 532 U.S. 731, 739 (2001).

> "Once within the discretion of the district court, exhaustion in cases
> covered by § 1997e(a) is now mandatory. All available remedies must
> now be exhausted; those remedies need not meet federal standards, nor

must they be plain, speedy, and effective. Even when the prisoner seeks relief not available in grievance proceedings, notably money damages, exhaustion is a prerequisite to suit. And unlike the previous provision, which encompassed only § 1983 suits, exhaustion is now required for all action[s] ... brought with respect to prison conditions, whether under § 1983 or any other Federal law."

*Porter v. Nussle*, 534 U.S. at 524 (citations omitted) (internal quotation marks omitted).

The exhaustion provision was enacted by Congress

> "to reduce the quantity and improve the quality of prisoner suits.... Congress afforded corrections officials time and opportunity to address complaints internally before allowing the initiation of a federal case. In some instances, corrective action taken in response to an inmate's grievance might improve prison administration and satisfy the inmate, thereby obviating the need for litigation. In other instances, the internal review might filter out some frivolous claims. And for cases ultimately brought to court, adjudication could be facilitated by an administrative record that clarifies the contours of the controversy."

*Porter v. Nussle*, 534 U.S. at 524–25.

A prisoner does not satisfy the PLRA's exhaustion requirements by merely filing an untimely or otherwise procedurally defective administrative grievance or appeal." *Woodford v. Ngo*, 548 U.S. 81, 83–84 (2006). "[E]xhaustion requirements are designed to ... give the agency a fair and full opportunity to adjudicate their claims." *Woodford v. Ngo*, 548 U.S. at 90. To properly exhaust administrative remedies under the PLRA, a prisoner must use all steps that the agency provides so that the agency addresses the issues on the merits. *Woodford v. Ngo*, 548 U.S. at 90. The exhaustion requirement gives prisoners

> "an effective incentive to make full use of the prison grievance process and accordingly provides prisons with a fair opportunity to correct their own errors. This is particularly important in relation to state corrections systems because it is difficult to imagine an activity in which a State has a stronger interest, or one that is more intricately bound up with state laws, regulations, and procedures, than the administration of its prisons."

4

*Woodford v. Ngo*, 548 U.S. at 94 (internal quotation marks omitted).

The PLRA requires a prisoner seeking money damages through a lawsuit brought under federal law to "complete a prison administrative process that could provide some sort of relief on the complaint stated, but no money" before filing suit. *Booth v. Churner*, 532 U.S. at 734. "[E]ven where the 'available' remedies would appear to be futile at providing the kind of remedy sought, the prisoner must exhaust the administration remedies available." *Patel v. Fleming*, 415 F.3d 1105, 1109 (10th Cir.2005) (citing *Jernigan v. Stuchell*, 304 F.3d 1030, 1032 (10th Cir.2002)). Only when the prisoner has completely exhausted the prison's administrative process has the inmate satisfied the exhaustion requirement for his prison conditions claim. *See Ross v. Cty. of Bernalillo,* 365 F.3d 1181, 1187 (10th Cir.2004)(holding that, because prison "was unable to do anything more in response to" the inmate's complaint, because neither "money damages or any other retrospective relief was available through the prison's grievance process," the inmate "was required to do no more in order to exhaust his administrative remedies with respect to his dangerous conditions of confinement claims," but also concluding that inmate had failed to grieve from alleged denials of medical treatment occurring after the date of first grievance, so those claims were not exhausted), *overruled on other grounds in part by Jones v. Bock*, 549 U.S. at 199.

The United States Supreme Court's rulings are unequivocal: "[t]here is no question that exhaustion is mandatory under the PLRA and that unexhausted claims cannot be brought in court." *Jones v. Bock*, 549 U.S. at 211 (citing *Porter v. Nussle*, 534 U.S. at 524). Indeed, "[e]xhaustion is no longer left to the discretion of the district court, but is mandatory." *Woodford*, 548 U.S. at 84. Exhaustion is a precondition to filing a suit, and

"an action brought before administrative remedies are exhausted must be dismissed without regard to concern for judicial efficiency." *Ruppert v. Aragon*, 448 Fed. App'x 862, 863 (10th Cir. 2012).

The mandatory language means a court may not excuse a failure to exhaust, even to take special or exceptional circumstances into account. *See Miller v. French,* 530 U.S. 327, 337 (2000) (explaining that "[t]he mandatory 'shall' ... normally creates an obligation impervious to judicial discretion"). Judge made exhaustion doctrines do remain amenable to judge-made exceptions. *See McKart v. United States,* 395 U.S. 185, 193 (1969) ("The doctrine of exhaustion of administrative remedies ... is, like most judicial doctrines, subject to numerous exceptions"). However, a statutory exhaustion provision, like the PLRA's statutory requirement, stands on a different footing. With statutory provisions, Congress establishes the rules—and courts have a role in creating exceptions only if Congress intends for them to do so. Therefore, mandatory exhaustion statutes like the PLRA create mandatory requirements and foreclose judicial discretion. *See*, *e.g., McNeil v. United States,* 508 U.S. 106, 111, 113 (1993) ("We are not free to rewrite the statutory text" when Congress has strictly "bar[red] claimants from bringing suit in federal court until they have exhausted their administrative remedies"). The Courts must take such statutes at face value and refuse to add unwritten limits onto the textual requirements. See, *e.g., id.,* at 111; *Shalala v. Illinois Council on Long Term Care, Inc.*, 529 U.S. 1, 12–14 (2000); see also 2 R. Pierce, Administrative Law Treatise § 15.3, p. 1241 (5th ed. 2010) (collecting cases). Courts may not engraft an unwritten "special circumstances" exception onto the PLRA's exhaustion requirement. *Ross v. Blake*, ___ U.S. ____, 136 S. Ct. 1850, 1862 (2016).

### III.  ANALYSIS OF PLAINTIFF JASPER'S CLAIMS

There can be no doubt that Plaintiff was a "prisoner" within the meaning of the PLRA at the time he filed his Complaint.  As defined by the statute: "[T]he term 'prisoner' means any person incarcerated or detained in any facility who is accused of, convicted of, sentenced for, or adjudicated delinquent for, violations of criminal law or the terms and conditions of parole, probation, pretrial release, or diversionary program." 42 U.S.C. § 1997e(h). A plaintiff's incarceration status "at the time he files suit" determines whether he is considered a "prisoner" for purposes of the PLRA. *Norton v. City of Marietta*, 432 F.3d 1145, 1150 (10th Cir. 2005). Plaintiff was incarcerated at the Curry County Adult Detention facility at the time he filed suit. (Doc. 1-2).  It is also undisputed that the allegations of Plaintiff's Complaint regarding alleged flooding with sewer water and being tazed, stripped to his boxer shorts, and made to clean up the dirty water deal with prison conditions at the facility.  (Doc. 1-2 at 6-9).  Therefore, Plaintiff was required to exhaust his prison remedies prior to filing suit.  *Jones v. Bock*, 549 U.S. at 211.

Plaintiff makes generalized allegations that "Plaintiff sought to exhaust his administrative remedies, but the grievance forms were not provided by the jail and when they were, they were not answered." (Doc. 1-2 at 5).  The Complaint is unsigned, and Plaintiff does not provide any factual detail or documentation to support his allegations. *See* Fed. R. Civ. P. 11(b)(3). An unsigned letter on an attorney's letterhead also states that all of a listed group of individuals have filed informal grievances but does not provide any further individualized detail. (Doc. 1-2 at 13).  The Defendants have answered, denied Plaintiff's allegation of exhaustion, and asserted the affirmative defense of failure to exhaust the prison administrative remedies.  (Doc. 4 at 2, 4).  Therefore, pursuant to

*Jones v. Bock*, on May 12, 2021, the Court ordered the Plaintiff to show cause why his federal claims should not be dismissed under § 1997e for failure of the Plaintiff to exhaust prison administrative remedies.  (Doc. 15).

Plaintiff did not directly respond to the Order to Show Cause.  Instead, he sent the Court a letter advising the Court that he was no longer incarcerated at the same facility and had a new address.  (Doc. 16).[1]  His June 10, 2021 letter acknowledged receipt of the Order to Show Cause, but indicated he was considering whether he wanted to pursue the case.  (Doc. 16).  Therefore, on October 27, 2021, the Court entered a Memorandum Opinion and Order granting Plaintiff additional time to consider whether to pursue this case and directing him to file a response to the Order to Show Cause within 180 days. (Doc. 17 at 9).

More than 180 days have passed since entry of the October 27, 2021 Memorandum Opinion and Order. Plaintiff has not communicated further with the Court. More than one year has now elapsed since entry of the Court's Order to Show Cause and Plaintiff has not presented any evidence or argument establishing that he exhausted his prison administrative remedies before filing this case. The Court infers from his lack of communication that he no longer intends to pursue this case.

Plaintiff's Complaint establishes that prison grievance procedures were available at the Curry County Detention Center.  (Doc. 1-2 at 5, 13).  Even though there may have been a delay in obtaining the forms, Plaintiff's Complaint also indicates that he did file grievance proceedings.  (Doc. 1-2 at 5, 13).  However, Plaintiff provides no information

---

[1] It should be noted that, although Plaintiff was apparently transferred to a different facility in 2018 shortly after this proceeding was filed, he never advised the Court of his new address until he fortuitously received a copy of the Order to Show Cause in 2021.

as to the date of filing or the content of any grievances.  He does contend that the grievances went unanswered, but he does not indicate the availability of remedies including an appeal or what steps he took, if any, to address the alleged failure to answer.

Plaintiff was notified that his Complaint did not establish exhaustion and was given a one-year opportunity to provide the Court with the necessary information to meet the exhaustion requirement.  He has failed to comply with the Court's Orders and has failed to show that he fully exhausted his prison remedies before filing suit. *Miller v. French,* 530 U.S. at 337. Therefore, the Court will dismiss this case for failure of Plaintiff to exhaust his administrative remedies.

## V.  Remand of State Law Claims

Plaintiff Jasper originally filed his Complaint in the Ninth Judicial District Court of the State of New Mexico.  He alleges that he is proceeding under the New Mexico Tort Claims Act, N.M. Stat. Ann. 41-4-1, et seq. (1978). (Doc. 1-2 at 2).  In addition to any federal claims, Jasper asserts state law tort violations.  (Doc. 1-2 at 1, 2).

Within the supplemental jurisdiction granted by 28 U.S.C. § 1367, a federal court has subject-matter jurisdiction over certain state-law claims.  A district court's decision whether to exercise supplemental jurisdiction after dismissing all claims over which it has original jurisdiction is discretionary. See § 1367(c).  Under § 1367(c), the district courts may decline to exercise supplemental jurisdiction over a claim if the district court has dismissed all claims over which it has original jurisdiction. *Osborn v. Haley*, 549 U.S. 225, 245 (2007); *Arbaugh v. Y & H Corp.*, 546 U.S. 500, 514, (2006).

The U.S. Supreme Court has stated that needless decisions of state law should be avoided both as a matter of comity and to promote justice between the parties, by

procuring for them a surer-footed reading of applicable law. *United Mine Workers of Amer. v. Gibbs*, 383 U.S. 715, 726 (1966). When all federal claims have been dismissed, a district court may, and usually should, decline to exercise jurisdiction over any remaining state claims. *Koch v. City of Del City*, 660 F.3d 1228, 1248 (10th Cir.2011); *Smith v. City of Enid ex rel. Enid City Comm'n*, 149 F.3d 1151, 1156 (10th Cir.1998); *Young v. City of Albuquerque,* 77 F. Supp. 3d 1154, 1185 (D.N.M. 2014).

This Court is dismissing all federal claims in this case.  The Court declines to exercise supplemental jurisdiction over Plaintiff Jasper's remaining state-law claims and will remand this proceeding to state court for adjudication of those state-law claims.

**IT IS ORDERED:**

(1) All federal claims asserted by Plaintiff Nick Jasper in his Tort Complaint for Damages (Doc. 1-2) are **DISMISSED** without prejudice for failure to exhaust administrative remedies; and

(2)  The remaining state law claim are **REMANDED** to the State of New Mexico, County of Curry, Ninth Judicial District Court.

**MARGARET STRICKLAND**
UNITED STATES DISTRICT JUDGE